IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EMILY CAPITANO-KONSANKE

    Plaintiff,

v.

ASCENSION BORGESS HOSPITAL,

    Defendant.

Case No.

Hon.

---

CARLA D. AIKENS, P.L.C.
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)
615 Griswold Street, Suite 709
Detroit, Michigan 48
carla@aikenslawfirm.com
austen@aikenslawfirm.com

---

## COMPLAINT

PLAINTIFF EMILY CAPITANO-KOSANKE, by and through her attorneys, Carla D. Aikens, P.L.C., submit the following Complaint against ASCENSION BORGESS HOSPITAL.

## JURY DEMAND

COMES NOW PLAINTIFF EMILY CAPITANO-KOSANKE and hereby makes her demand for trial by jury.

1

# JURISDICTION

1. At all times relevant to this complaint, Plaintiff Emily Capitano-Konsanke was a resident of Allegan County in the State of Michigan.

2. Defendant, Ascension Borgess Hospital, is a domestic non-profit corporation that conducts systemic and regular business in Kalamazoo County in the State of Michigan.

3. This Court has federal question jurisdiction over the subject matter of Plaintiff's claimed violations Title I of the Americans with Disabilities Act of 1990 42 U.S.C. § 12101, et seq. ("ADA") giving rise to Plaintiff's claims occurred in this district.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

5. This action is authorized by 42 U.S.C. § 12117.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## EXHAUSTION

7. Plaintiff received Right To Sue letters from the EEOC on April 24, 2024, for the following Charge Number: 471-2022-02361.

## STATEMENT OF FACTS

8. Plaintiff began working for Defendant on or about January 3, 2017 as a Medical Assistant.

9. On or about February 24, 2022, Plaintiff submitted a "Reasonable Accommodation Request" to the Defendant related to her disability.

10. Defendant did not take into account the suggestions of Plaintiff or her doctor when looking at potential accommodations.

11. Plaintiff submitted a second "Reasonable Accommodation Request" further detailing her needs, how the Defendant was failing to adequately accommodate them, and her doctors' recommendations.

12. Even with the second request submitted, Defendant failed to engage in the interactive process which caused Plaintiff to receive writeups, disqualifications from annual raises, and threats of further disciplinary action.

13. There exists a reasonable accommodation that would eliminate the conflict between Defendant's schedule, and Plaintiff's medically recommended one; however, such accommodation was not offered.

14. In June of 2022, Plaintiff again attempted to request a reasonable accommodation from Defendant, but was again denied.

15. After the June denial, Plaintiff received heightened scrutiny on attendance as well as general harassment.

16. Other non-disabled employees were not subjected to similar treatment.

17. Also, during this time, Plaintiff attempted to use her FMLA leave to assist in making her employment work with her disability.

18. Upon information and belief, Plaintiff received discipline and further scrutiny after electing to use her FMLA leave.

19. A July 19, 2022 email entitled "Revised CA form due to FMLA Approval" connected discipline directly to the use of Plaintiff's FMLA leave.

20. Also, during this time, Plaintiff received higher point values for similar actions than her fellow coworkers who were not disabled.

21. This occurred frequently after Plaintiff disclosed her disability to Wendy Bourbeau, RMA.

22. Upon information and belief, Plaintiff's performance reviews show an ability to perform the essential functions of the job.

23. Defendant received several doctors' notes regarding Plaintiff's condition, but refused to engage in the good faith interactive process.

24. Defendant repeatedly denied Plaintiff's FMLA leave or otherwise denied reasonable accommodations forcing her to file appeals and seek back dated approval.

25. In September of 2022, Defendant denied Plaintiff an effective reasonable accommodation, all but forcing Plaintiff to resign due to the refusal to appropriately accommodate her disability.

26. Plaintiff's EEOC Charge No. 471-2022-02361 received a Right to Sue letter on April 24, 2024, and this lawsuit followed.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION Of TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")**

27. Plaintiff hereby incorporates by reference the preceding paragraphs of the Complaint, as if fully set forth herein.

28. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the ADA, 42 U.S.C. § 12101, et seq.

29. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

30. Plaintiff has been diagnosed and Defendant provided with documentation of her disability that falls within the meaning of the ADA.

31. Plaintiff's disability under the ADA is qualified, meaning that with reasonable accommodation, she can perform the essential functions and duties of her job.

32. Section 12112(a) of the ADA, makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

33. As outlined throughout this Complaint, Plaintiff was discriminated against on the basis of her disability in regard to compensation, leave, and other terms, conditions, and privileges of employment.

34. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

35. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

36. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

37. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

38. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## DISCRIMINATION ON THE BASIS OF DIABILITY IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN RIGHTS ACT MCL 37.2102 et seq.

39. Plaintiff incorporates by reference allegations in the preceding paragraphs.

40. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of ELCRA.

41. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

42. Plaintiff has a disability within the meaning of ELCRA.

43. Plaintiff's disability is qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of her job.

44. ELCRA makes it illegal to, discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position.

45. As laid out in the statement of facts, Defendant discriminated against Plaintiff with respect to the compensation, leave, terms, conditions, and privileges of her employment because of her disability when, including, but not limited to, refusing a reasonable accommodation, giving her more disciplinary points than other non-disabled employes for similar actions, placing her under heightened scrutiny, issuing discipline related to her disability/her medical leave, and threatened her with higher forms of discipline after Defendant found out about her disability and her attempts to use available tools to accommodate it.

46. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

47. But for Defendant's illegal discrimination Plaintiff would not have been damaged nor had to leave the Defendant's employment.

48. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, physical distress, mental anguish, and emotional distress.

49. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

50. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

51. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

52. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

53. At all material times, Plaintiff was an employee covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

54. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

55. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

56. Plaintiff engaged in protected activity when she repeatedly meet with supervisors and HR to discuss the retaliation and discrimination she felt due to her disability.

57. Defendant's, through their employees, had knowledge that Plaintiff engaged in protected behavior because Plaintiff gave direct notice to her supervisors.

58. Plaintiff's engagement subjected her to further adverse treatment as set forth in the statement of facts and the threat of being terminated for voicing her concerns.

59. Plaintiff was not given a reasonable accommodation, received more disciplinary points than other non-disabled employes for similar actions, received heightened scrutiny, received discipline, and was threatened with higher forms of discipline after Defendant found out about her disability and her attempts to use available tools to accommodate it.

60. Defendant's and their agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

61. Plaintiff notified Defendant's and their agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

62. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

63. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

64. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
**RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN RIGHTS ACT MCL 37.2102 et seq.**

65. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

60. At all material times, Defendant was an employer covered by, and within the meaning of, the ELCRA.

61. At all material times, Plaintiff was an employee covered by, and within the meaning of, the ELCRA.

62. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

63. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

64. Plaintiff engaged in protected activity by making repeated formal

complaints about the treatment she endured, requested multiple accommodations, and other activities as alleged in the Statement of Facts.

65. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior because she was engaging in this protected activity with her superiors.

66. After Plaintiff engaged in protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions against Plaintiff, culminating in her being constructively terminated.

67. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

68. Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

69. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

70. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

71. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V

**INTERFERENCE AND RETALIATION IN VIOLATION OF THE ADA**

72. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

73. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ADA, 42 U.S.C. § 12101, et seq.

74. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

75. Plaintiff had a disability as communicated to her employer by her own words and the notes/letters of her doctor; as a result, Plaintiff has a disability within the meaning of the ADA.

76. Plaintiff's disabilities under the ADA are qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of her job.

77. Section 12203(a) of the ADA makes it illegal for anyone to, "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."

78. Plaintiff faced retaliation when she was not given a reasonable accommodation, received more disciplinary points than other non-disabled employes for similar actions, received heightened scrutiny, received discipline, and was threatened with higher forms of discipline after Defendant found out about her disability and her attempts to use available tools to accommodate it.

79. Moreover, Section 12203(b) of the ADA makes it, "…unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of her or her having exercised or enjoyed…"

80. Defendants interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when Defendant refused to discuss or consider any employment for Plaintiff, and then stopped and cancel her disability.

81. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

82. But for Defendant's illegal discrimination Plaintiff would not have been damaged nor constructively discharged.

83. As a direct and direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

84. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

14

85. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## INTERFERENCE AND RETALIATION IN VIOLATION OF THE PWDCRA

86. Plaintiff incorporates by reference the allegations set forth above as if alleged herein.

87. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

88. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

89. Plaintiff has a disability within the meaning of the PWDCRA.

90. Plaintiff's disability is qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of her job.

91. MCL 37.1602(a) makes it illegal to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act."

92. Plaintiff faced retaliation when was not given a reasonable accommodation, received more disciplinary points than other non-disabled employes for similar actions, received heightened scrutiny, received discipline, and was threatened with higher forms of discipline after Defendant found out about her disability and her attempts to use available tools to accommodate it.

93. Moreover, MCL 37.1602(f) makes it illegal to, [c]oerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of… any right granted or protected by article 5."

94. Defendant interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when Defendant as alleged in the statement of facts.

95. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

96. But for Defendant's illegal discrimination Plaintiff would not have been damaged nor constructively discharged.

97. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

98. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

99. Plaintiff requests relief as described in the Prayer for Relief below

## COUNT VII
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE AND RETALIATION

100. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

16

101. At all relevant times, Plaintiff was Defendant's employee within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

102. At all relevant times, Defendant was an employer within the meaning of the FMLA, 29 U.S.C. § 2601, *et seq.*

103. Plaintiff fell within the protection of the FMLA as a person with a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

104. At all relevant times, Plaintiff suffered from and/or had medical conditions that required the use of her accrued leave.

105. Under the FMLA, Defendant had an obligation to provide Plaintiff with up to 12 weeks of leave for a serious health condition which rendered Plaintiff unable to perform the functions of her position.

106. In addition, Defendant is prohibited under FMLA from retaliating against Plaintiff for requesting and/or taking FMLA leave.

107. As a direct and proximate result of Defendant' violation of FMLA and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

108. As a direct and proximate result of Defendant's violation of FMLA and retaliation, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life

due to irritability, depression, anxiety, worry, humiliation, grief, sadness, anger, and panic attacks.

109. As a direct and proximate result of Defendant's violation of FMLA and retaliation, Ms. Catchings required medical care.

Dated: July 23, 2024

## RELIEF REQUESTED

Plaintiff Emily Capitano-Kosanke requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: July 23, 2024                Respectfully Submitted,

/s/ Austen J. Shearouse_____
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226